*Marian F. Harrison*
Marian F. Harrison
US Bankruptcy Judge

Dated: 2/28/2017



# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: | ) |
| | ) CASE NO. 315-03170 |
| MARK KEITH BATSON, AND | ) |
| MARY MICHELE BATSON, | ) JUDGE MARIAN F. HARRISON |
| | ) |
| Debtors. | ) Chapter 7 |
| | ) |
| | ) |
| RICHARD POOLE, AND | ) ADV. NO. 315-90375 |
| DEEANNE POOLE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| MARK KEITH BATSON, AND | ) |
| MARY MICHELE BATSON, | ) |
| | ) |
| Defendants. | ) |

___

## MEMORANDUM OPINION
___

The Pooles filed the above-styled adversary complaint to determine whether their claim against the Batsons is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). The Pooles also seek treble damages, attorney fees, and costs pursuant to the Tennessee Consumer Protection Act (hereinafter "TCPA"). For the following reasons, which

represent the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1), as incorporated by Fed. R. Bankr. P. 7052, the Court finds that the Pooles' claim is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(4) and that the Pooles are entitled to treble damages, attorney fees, and costs related to the Impact Fee pursuant to the TCPA.

## I. FACTS

On May 17, 2014, the Pooles met with the Batsons to discuss the construction of a new home on property located in Mount Juliet. Mr. Batson indicated that he had been in construction for about 30 years and that he was very experienced with residential construction. Mr. Batson provided the Pooles with a competitive preliminary budget for the project.

Prior to executing a contract for construction, Ms. Poole had a telephone conversation with Ms. Batson who participated in the debtors' construction business. Ms. Poole was concerned about the safety of the Retainer they were to provide, and her lawyer had recommended that it be put into an escrow account. Ms. Batson reassured Ms. Poole in an email on February 2, 2015, that "[t]he retainer is a working retainer and is set up in house for your job."

On February 6, 2015, the Pooles entered into a Residential Construction Agreement (hereinafter "Construction Agreement") with the Batsons to provide residential construction and improvement services. The Construction Agreement required the Pooles to deliver to the Batsons a retainer check (hereinafter "the Retainer") in the amount of $22,553.51. Specifically, the Construction Agreement provided:

> Owner shall deposit with Builder, a **retainer** in the amount of **twenty two thousand, five hundred and fifty three dollars and 51 cents** USD **($22,553.51)** to be deposited within 3 business days after closing of construction loan. The retainer shall be credited toward the total Construction Cost upon completion.

The Pooles paid the Retainer in the amount of $22,553.51 on February 27, 2015. The Retainer was deposited into the Batsons' checking account on that same date. On the day before the Retainer was deposited, the Batsons' checking account had a negative ending balance of $302.78. On the date of the deposit, the checking account had an ending balance of $9292.40. One week after the deposit, the Batsons' account again had a negative balance. There is no dispute that the Batsons used the Retainer for other purposes, including other projects and general business and personal expenses.

On March 21, 2015, the Pooles delivered a payment in the amount of $6751.01 to the Batsons, representing payment of an invoice presented by the Batsons, dated March 20, 2015, for expenses that had been paid by the Batsons pursuant to the Construction Agreement, including a $3000 Wilson County Impact Fee (hereinafter "Impact Fee') and a $300

3 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:15-ap-90375    Doc 44    Filed 02/28/17    Entered 02/28/17 14:44:36    Desc Main
Document      Page 3 of 17

Contractor Fee (representing 10% of the Impact Fee). The Poole's check was deposited in the Batsons' checking account on March 23, 2015. The Impact Fee had not been paid by the Batsons and was not required for the project. Mr. Batson testified that he did not know the Impact Fee could be waived until after he and his wife filed their bankruptcy petition. The $3300 was never returned to the Pooles.

The Batsons filed their Chapter 7 bankruptcy petition on May 7, 2015. On May 12, 2015, the Batsons advised the Pooles via email of their intention to abandon the project. On May 20, 2015, the Batsons' bankruptcy attorney provided an accounting indicating the purchase of a culvert and a silt fence delivered to the project, totaling $618.83. This amount was never invoiced and apparently was the only amount paid by the Batsons for the Pooles' project. The Pooles assert that after crediting the Batsons for the purchase of the culvert and silt fence, the total balance paid to the Batsons and still owed is $25,234.68. After the Batsons had filed their bankruptcy, on August 11, 2015, the Pooles' attorney provided a written request to return the Retainer within 10 days. The retainer was not returned. The Pooles submit that they have incurred and/or anticipate incurring attorneys' fees of $15,221 and total non-filing fee expenses of $618.96 for a total of $15,839.96.

4 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:15-ap-90375    Doc 44    Filed 02/28/17    Entered 02/28/17 14:44:36    Desc Main
Document      Page 4 of 17

## II. DISCUSSION

### A. Dischargeability

Generally, exceptions to discharge are to be construed strictly against the creditor. *Gleason v. Thaw*, 236 U.S. 558, 562 (1915). The burden of proof falls upon the party objecting to discharge to prove by a preponderance of the evidence that a particular debt is nondischargeable. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). The primary purpose of bankruptcy is to grant a "fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367 (2007) (citation and internal quotation marks omitted). Because the bankruptcy discharge is central to a "fresh start," discharge exceptions "are to be strictly construed against the creditor and liberally in favor of the debtor." *Risk v. Hunter (In re Hunter),* 535 B.R. 203, 212 (Bankr. N.D. Ohio 2015) (citations omitted).

### B. 11 U.S.C. § 523(a)(2)(A)

The Pooles assert first that the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A). The Pooles argue that the Batsons obtained the Retainer under the false representation or pretense that it was to be set up in house for their home, specifically to cover costs for their home between billing cycles. The Pooles contend that the Batsons never "set up [the Retainer] in house" and never intended to use the Retainer for their home but instead paid other bills and personal expenses from the Retainer. The Pooles also argue that the second draw request by the Batsons for the $3000 Impact Fee plus 10% Contractor Fee was procured by false representation or false pretense because the contract required the

5 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:15-ap-90375    Doc 44    Filed 02/28/17    Entered 02/28/17 14:44:36    Desc Main
Document    Page 5 of 17

Pooles to reimburse the Batsons' expenses on the project and no Impact Fee had been paid by the Batsons when the invoice was presented. Finally, the Pooles assert that the Batsons violated the Tennessee statutory scheme for contractors in T.C.A. § 66-11-140, which provides:

> Use of the proceeds as enumerated in §§ 66-11-137 – 66-11-139 for any purpose other than either payment pursuant to written agreement between the parties or in accordance with the allocation of costs and profits under generally accepted accounting principles for construction projects shall be prima facie evidence of intent to defraud. Use of a single business bank account for multiple projects shall not be evidence of intent to defraud.

The Batsons counter that they always used one account for all projects.

Taking the state statute argument first, T.C.A. § 66-11-140 creates a prima facie case of intent to defraud, thus shifting the burden of proof to the contractor to show lack of intent. However, nondischargeability of a debt under 11 U.S.C. § 523(a)(2)(A) is governed by federal law. ***Wilson v. Mettetal (In re Mettetal)***, 41 B.R. 80, 86 (Bankr. E.D. Tenn. 1984) (citation omitted). Under 11 U.S.C. § 523(a)(2)(A), a creditor has the burden of proving by a preponderance of the evidence five elements:

> (1) a materially false representation (2) made with knowledge of its falsity and
> (3) with the intent to deceive, (4) reasonably relied upon by the creditor and
> (5) proximately resulting in the creditor's loss.

*Id*. at 87 (citation omitted); ***Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)***, 141 F.3d 277, 280-81 (6th Cir. 1998) (citation omitted). Thus, the prima facie case set out

in T.C.A. § 66-11-140 does not suffice for nondischargeability under 11 U.S.C. § 523(a)(2)(A).

As to false representation or false pretense, the conversation Ms. Batson had with Ms. Poole, in which Ms. Poole requested that their money be put in escrow, together with Ms. Batson's reassurance in the email that the Retainer would be set up in house for the Pooles' project constitutes either a false representation or false pretense.[1]

According to the Batsons, they always commingled funds for their projects, and they were permitted to do so. Yet that notion of the Retainer was not made clear to Ms. Poole. Instead, she was led to believe her money was set up and protected in house as a separate Retainer, not just on paper as the Batsons contended at trial.

The second element under 11 U.S.C. § 523(a)(2)(A) is fraudulent intent. In this Circuit, we are to apply a subjective standard – that is, what did this particular debtor intend? Normally, "a debtor's intention – or lack thereof – must be ascertained by the totality of the circumstances" since a debtor will rarely admit to fraudulent intent. ***In re Rembert***, 141 F. 3d 277, 282 (citation omitted).

---

[1] A false pretense is an "'implied misrepresentation or conduct intended to create and foster a false impression.'" ***Tennessee State Bank v. Reveiz (In re Reveiz)***, Bankr. No. 09-30164, Adv. No. 09-3185, 2011 WL 1100121, *4 (Bankr. E.D. Tenn. March 22, 2011) (quoting ***Haney v. Copeland (In re Copeland),*** 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003)).

7 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:15-ap-90375   Doc 44   Filed 02/28/17   Entered 02/28/17 14:44:36   Desc Main
Document      Page 7 of 17

Here, the facts supporting the finding of a false representation or false pretense also support a finding of fraudulent intent. Ms. Batson knew when she reassured Ms. Poole that the Retainer would be set up in house for the Pooles' project that her statement was not true because they never did business that way. Fraudulent intent is also shown by the Batsons' undisputed financial problems. The day before the Pooles' $22,553.51 check was deposited, the Batsons' business account had a negative balance of $302.78. Most of the Retainer was gone immediately – the account ending balance was $9292.40 on the date the Pooles' check was deposited. Within a week, the account again had a negative balance.

Mr. Batson relied upon his accounts receivable to counter the facts showing intent. The overdrafts just prior to the Retainer's deposit and again within a week refute his testimony that the business was doing well. Frankly, how his business was going is a red herring here. Ms. Poole was assured the Retainer was set up in house for their project when she asked about an escrow account. The Batsons needed cash, they got it from the Retainer, and they spent it immediately on other projects. The totality of the circumstances show the Batsons acted with the requisite fraudulent intent.

The Court finds particularly credible Ms. Poole's account of the events. She relied on Ms. Batson's assurance that the Retainer was to be set up in house for the Pooles' project. The fact that the Retainer was not set up as represented was the proximate cause of the Pooles' loss, regardless of the Batsons' problems with other projects.

8 - U.S. Bankruptcy Court, M.D. Tenn.

The same is true with the request for the $3000 Impact Fee plus the 10% Contractor Fee. Ms. Poole understood, and the contract provided, that invoices would be sent after the Batsons paid costs on the Pooles' behalf. Further, the Batsons were required to hold any additional funds until the Pooles received an invoice showing that the expense had been paid. Yet here, the Batsons had not paid any expense, but they sent an invoice indicating they had paid the Impact Fee, and the Impact Fee was not even required.[2] The Batsons did not return the $3300; they used it for purposes other than the Pooles' home. In effect, they were robbing Peter to pay Paul. In light of the totality of the circumstances, the invoice for the $3000 Impact Fee plus the $300 Contractor Fee meets the requirements of 11 U.S.C. § 523(a)(2)(A).

### C. **11 U.S.C. § 523(a)(4)**

While not necessary to the conclusion reached here, the Pooles further contend that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) because the Batsons embezzled by converting the Retainer and the Impact Fee plus Contractor Fee for their own purposes, with full knowledge that the Pooles had entrusted the funds to the Batsons for the sole purpose of constructing the Pooles' home.

---

[2] That the Batsons did not know the Impact Fee was not required is also a red herring. They had not paid it when they presented the invoice.

Under 11 U.S.C. § 523(a)(4), a discharge can be denied for a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Section 523(a)(4) creates two distinct exceptions to discharge: (1) fraud or defalcation while acting in a fiduciary capacity, and (2) embezzlement or larceny whether or not acting in a fiduciary capacity. ***Gribble v. Carlton (In re Carlton)***, 26 B.R. 202, 205 (Bankr. M.D. Tenn. 1982) (citations omitted). Embezzlement under 11 U.S.C. § 523(a)(4) is defined as "'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" ***Brady v. McAllister (In re Brady),*** 101 F.3d 1165, 1172–73 (6th Cir. 1996) (quoting ***Gribble v. Carlton (In re Carlton)***, 26 B.R. at 205)).

In order to show embezzlement, a creditor must prove three elements by a preponderance of the evidence: (1) the property of the creditor was entrusted to the debtor; (2) the debtor appropriated the property for a use other than that for which it was entrusted; and (3) the circumstances indicate fraud. *Id.* at 1173 (citation omitted). The fraud element may be satisfied by a showing of deceit. ***See Nat'l City Bank v. Imbody (In re Imbody)***, 104 B.R. 830, 841 (Bankr. N.D. Ohio 1989) (citations omitted) ("[m]ost courts that have considered the issue have held that acting with deceit will satisfy the fraudulent intent requirement" of embezzlement). The fraud element of 11 U.S.C. § 523(a)(4) is "fraud in fact, involving moral turpitude or intentional wrong" and requires "proof of the debtor's fraudulent intent in taking the [creditor's] property." ***Cash Am. Fin. Servs., Inc. v. Fox (In***

*re Fox)*, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007) (citations omitted). A debtor's fraudulent intent is often shown by circumstantial evidence. *Id*. (citation omitted).

In the present case, the Pooles entrusted the Retainer to the Batsons for the purpose of constructing their residence, and they relied on the assurances of Ms. Batson that the Retainer would be used for their construction. The funds were used for purposes other than the construction of the Pooles' residence. The Batsons took the Pooles' Retainer and money for the Impact Fee without having incurred that expense for reimbursement and did not use it on the Pooles' home. As discussed earlier, the Batsons had a negative bank balance the day before the Retainer was deposited; after the deposit, more than half of the Retainer was gone; and within a week of the deposit, the Batsons again were overdrawn. In addition, the Batsons billed the Pooles for the Impact Fee when no Impact Fee had been paid by the Batsons and no Impact Fee was required. The Batsons knew of their cash problems when they took the Pooles' money, and they knew the Pooles understood what they had represented regarding the Retainer and the Impact Fee. This case is different from one where there was no representation that the funds would be set up in house for their project or that draws would be required before the contractor incurred expenses. *See In re Mettetal*, 41 B.R. 80, 88. Accordingly, the debt to the Pooles is also non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## D.  11 U.S.C. § 523(a)(6)

Pursuant to 11 U.S.C. § 523(a)(6), a debt is nondischargeable when the debt is "for willful and malicious injury by the debtor to another entity or to the property of another entity."  This discharge exception requires an injury resulting from conduct that is "both willful and malicious." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999).  "[U]nless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)."  *Id.* at 464 (internal citation omitted).  It is insufficient that a reasonable debtor "should have known" that his conduct risked injury to others.  *Id.* at 465 n.10.  Instead, the debtor must "will or desire harm, or believe injury is substantially certain to occur as a result of his behavior."  *Id.*  "The conduct 'must be more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from . . . legal rights. . . . [K]nowledge that legal rights are being violated is insufficient to establish malice.'"  *Steier v. Best (In re Best),* 109 F. App'x 1, 6 (6th Cir. 2004) (citation omitted).  In other words, "[l]ack of excuse or justification for the debtor's actions will not alone make a debt nondischargeable under § 523(a)(6)."  *S. Atlanta Neurology & Pain Clinic, P.C. v. Lupo (In re Lupo),* 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006) (citation omitted).

The Pooles have not shown that the Batsons maliciously intended to harm them.  The Batsons were known for doing excellent work, and the Court believes Mr. Batson's

testimony that his intent was to finish all the projects. There is proof that the Batsons intentionally mislead the Pooles and converted their money, but there is no proof that they acted maliciously toward the Pooles.

### E. Tennessee Consumer Protection Claim

In addition to an order of nondischargeability, the Pooles are seeking reimbursement of reasonable attorney fees and expenses and treble damages pursuant to the TCPA. Specifically, the Pooles assert that it is a violation of the TCPA for a home improvement services provider with intent to defraud to fail to refund amounts paid under the contract for home improvement services within 10 days of the acceptance of a written request. T.C.A. §§ 39-14-154(b)(1) and (c)(4). Moreover, the Pooles assert that the Batsons violated the TCPA by charging them for the Impact Fee when they had not paid the Impact Fee and none was required.[3] *See* T.C.A. §§ 47-18-104(b)(12) and (13).

In order to recover under TCPA, a plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice set forth in T.C.A. § 47-18-104(b); and (2) that the defendant's conduct caused an ascertainable loss. T.C.A. § 47–18–109(a)(1). Upon a finding that a provision of the TCPA has been violated, the court may award reasonable attorney's

---

[3]The Tennessee Tort Reform Act in 2011 eliminated the catchall phrase which provided a private right of action for any deceptive act causing damage to a consumer. Afterwards, a private right of action is available only for deceptive acts or practices set forth in the long list contained in T.C.A. § 47-18-104(b).

13 - U.S. Bankruptcy Court, M.D. Tenn.

fees and costs. T.C.A. § 47–18–109(e)(1). If the defendant's conduct was willful or knowing, the court may award treble damages. T.C.A. § 47–18–109(a)(3). "*Like punitive damages, treble damages are not intended to compensate an injured plaintiff but rather to punish the defendant and to deter similar conduct in the future.*" **Smith Corona Corp. v. Pelikan, Inc.**, 784 F. Supp. 452, 483–84 (M.D. Tenn. 1992) (citation omitted). In determining whether treble damages should be awarded, a court may consider the following:

> (A) The competence of the consumer or other person;
>
> (B) The nature of the deception or coercion practiced upon the consumer or other person;
>
> (C) The damage to the consumer or other person; and
>
> (D) The good faith of the person found to have violated the provisions of this part.

T.C.A. § 47–18–109(a)(4). All such damages are excepted from discharge under 11 U.S.C. § 523(a)(2)(A). **See Cohen v. de la Cruz,** 523 U.S. 213, 221 (1998).

With regard to the Batsons' failure to refund the Retainer, T.C.A. § 39-14-154(b)(1)(A)(i) provides that "[i]t is an offense for a home improvement services provider with intent to defraud to . . . [f]ail to refund amounts paid under a contract for home improvement services within ten (10) days of . . . [t]he acceptance of a written request." A violation of T.C.A. § 39-14-154(b)(1)(A) is only an offense if:

> (i) No substantial portion of the contracted work has been performed at the time of the request;

(ii) More than ninety (90) days have elapsed since the starting date of the contract for home improvement services; and

(iii) A copy of the written request for a refund was sent by the residential owner to the consumer protection division of the office of the attorney general.

T.C.A. § 39-14-154(b)(1)(B). A violation of § 39-14-154 constitutes an unfair or deceptive act or practice affecting the conduct of trade or commerce under the TCPA. T.C.A. § 39-14-154(c)(4).

In the present case, the request for refund was presented to the Batsons after they had filed their Chapter 7 bankruptcy petition. With no designated Retainer in the Batsons' account, bankruptcy law would not have allowed the Batsons to turnover estate funds post-petition to one creditor based on a demand letter sent pursuant to the TCPA. While in bankruptcy, the failure of the Batsons to comply with the Pooles' demand letter was not a violation of the TCPA.

As to the Impact Fee issue, T.C.A. § 47-18-104(b) lists the following relevant acts as violations of TCPA:

(12) Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law;

(13) Representing that a service, replacement or repair is needed when it is not.

The Batsons knew or should have known with their 30 years of experience that an Impact Fee was not required. In addition, the Batsons sent an invoice indicating they had paid the necessary Impact Fee, when they knew they had not paid it. Accordingly, the Court finds that the Batsons violated the TCPA by representing that the Impact Fee was required and by accepting payment from the Pooles for an unnecessary fee that the Batsons never paid. This would entitle the Pooles to reasonable attorney fees and costs. *See* T.C.A. § 66-11-138(a)(1).

The Court further finds that the Pooles are entitled to treble damages as to the Impact Fee and the 10% Contractor Fee based on the factors set forth in T.C.A. § 47-18-109(a)(4) as set forth above. Unlike the Pooles who were not in the construction business, the Batsons were in a position to know whether an Impact Fee was required. Moreover, the Batsons invoiced and received payment from the Pooles for the Impact Fee and Contractor Fee as though the Batsons had already paid it even though no such fee had been paid. The Batsons then spent that money elsewhere. These actions are not indicative of good faith, and as a result of those actions, the Pooles suffered damages in the amount of $3300. Accordingly, the Pooles are entitled to $9900 plus reasonable attorney fees and costs for this violation of the TCPA. The Batsons' attorney shall present an affidavit supporting such fees and costs relating to the Impact Fee.

## III. CONCLUSION

Accordingly, the Court finds that the debt owed to the Pooles is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(4). In addition, the Court finds that the Batsons violated the TCPA with regard to the Impact Fee, and therefore, the Pooles are entitled to treble damages, attorney fees and non-filing fee expenses (both to be requested by affidavit of counsel) for this claim. Such damages and fees are also nondischargeable. In summary, the Pooles are entitled to $22,553.51 (the Retainer) plus $9900 (the Impact Fee plus 10% Contractor Fee plus treble damages) for a total of $32,453.51, plus attorney fees and non-filing fee expenses related to the Impact Fee, all of which is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**

17 - U.S. Bankruptcy Court, M.D. Tenn.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Case 3:15-ap-90375    Doc 44    Filed 02/28/17    Entered 02/28/17 14:44:36    Desc Main
Document      Page 17 of 17